UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JASMINE GILLETTE,

        Plaintiff,

v.                                      Case No. 19-C-275

SERVICE INTELLIGENCE LLC and
CREDIT ACCEPTANCE CORPORATION,

        Defendants.

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

When deciding whether to compel arbitration, federal law requires courts to review, but not revise, the scope of arbitration provisions. To avoid arbitration, Plaintiff Jasmine Gillette asks the court to find that the arbitration clause contained in her auto finance contract excludes the present repossession dispute amongst the parties. Gillette purchased a vehicle by financing it with a retail installment sales contract, which contained a binding arbitration clause. She missed payments due under the contract and Defendants repossessed her car. Gillette now alleges that the repossession violates the Fair Debt Collection Practices Act (FDCPA), the Wisconsin Consumer Act (WCA), and amounts to the common law tort of conversion. Defendant Credit Acceptance Corporation, joined by Defendant Service Intelligence LLC, moved to compel arbitration. Dkt. Nos. 13, 19. For the reasons explained below, the motion to compel arbitration is granted.

## BACKGROUND

Gillette obtained financing to purchase a 2016 Mazda sedan from a car dealership in Appleton, Wisconsin, on or about June 2, 2017. She executed a retail installment sales contract (the

Contract) providing for 66 payments with an interest rate of 22.99%. The dealership assigned the Contract, together with the security interest in the vehicle, to Defendant Credit Acceptance Corporation (Credit Acceptance). Gillette subsequently missed payments due under the Contract and Credit Acceptance engaged Defendant Service Intelligence LLC to repossess Gillette's vehicle on or about February 15, 2019.

Gillette alleges that Defendant Service Intelligence LLC violated the FDCPA by repossessing Plaintiff's vehicle without the legal authority to do so. *See* 15 U.S.C. § 1692 *et seq*. Gillette further claims that Credit Acceptance violated the WCA by involuntarily repossessing Gillette's car without first mailing a written notice. *See* Wis. Stat. § 425.205 *et seq*. Gillette also brings a tort claim against Defendants for conversion of Gillette's car, contending it was obtained improperly through repossession.

The Contract contained an arbitration clause pursuant to which Defendants have moved to compel arbitration. The arbitration clause filled the entire final page of the five-page Contract Gillette executed to finance her vehicle. Dkt. No. 15-1. The first page of the Contract contained a box (outlined in black) specifically flagging that the agreement contained an arbitration clause whereby the parties "may elect to resolve any dispute by arbitration and not by court action" and directing the reader to page five of the Contract for the entire arbitration clause. *Id.* at 1. Gillette placed her initials at the bottom of this box, confirming that she read, understood, and agreed to the terms and conditions of the arbitration clause. *Id.* The parties disagree over the scope and coverage of the operative language of the arbitration clause. At issue is the definition of "Dispute" as used in the arbitration clause, which says:

> A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this

> Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories. Notwithstanding the foregoing, "Dispute" does not include any individual action brought by You in small claims court or Your state's equivalent court, unless such action is transferred, removed or appealed to a different court. "Dispute" does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind. In addition, "dispute" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver described in the sixth paragraph of this Arbitration Clause, the last sentence of the seventh paragraph of this Arbitration Clause and/or this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide.

*Id.* at 5.

## LEGAL STANDARDS

The Federal Arbitration Act (FAA) governs the arbitration of contracts involving interstate commerce. *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1271–72 (7th Cir. 1976). A motion to compel arbitration pursuant to § 4 of the FAA presents a question of federal law. *See id.* Per the FAA, an arbitration clause within a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

In order to compel arbitration under the FAA, a party must identify: "(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Druco Rests., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014) (citing *Zurich American Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577,

580 (7th Cir. 2006)). There exists a presumption in favor of arbitration when the arbitration clause is broad by its own terms. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. TriMas Corp.*, 531 F.3d 531, 536 (7th Cir. 2008) (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). Arbitration clauses are to be interpreted "according to their plain meaning" and the text construed "for a commonsense result." *Id.* (citing *Air Line Pilots Ass'n, Int'l v. Midwest Exp. Airlines, Inc.*, 279 F.3d 553, 556 (7th Cir. 2002)). To the extent unclear, "ambiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989).

**ANALYSIS**

To oppose the motion compelling arbitration, Gillette first asks the court to narrowly interpret the Contract's definition of "Dispute." As an initial matter, Gillette argues that her claims do not "arise out of" the Contract, but stem from a "single statutory violation, the failure of Credit Acceptance to comply with the pre-repossession right to cure requirements of the WCA." Dkt. No. 16 at 5. Gillette theorizes that because "Dispute" is defined as a claim "arising out of or in any way related to this Contract," its scope should not include statutory claims. *Id.* This does not comport with the plain reading of the text, however. The Contract provides that "Dispute" has "the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories." Dkt. No. 15-1 at 5. Claims based on statute and tort are explicitly mentioned, in addition to those "in any way related" to the Contract. Further, it is unclear how Gillette's claims—statutory or otherwise—do not "arise" from the Contract; absent the Contract she would have no car to be repossessed nor evidence of

4

ownership to challenge Defendants' actions. The court will not isolate sentence segments out of context and avoid the plain meaning of the text to fit Gillette's desired result.

To establish that statutory actions are precluded from arbitration under the Contract, Gillette points to a Wisconsin Court of Appeals decision where Credit Acceptance's arbitration policy was also at issue. *Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶ 1, 346 Wis. 2d 635, 639, 829 N.W.2d 522, 524. However, Gillette concedes that the arbitration clause in *Kirk* omitted the very language at issue here—that the arbitration clause's scope should cover claims based on "tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories." Dkt. No. 16 at 6. The parallel language in *Kirk* addressed only "contract claims, and claims based on tort or any other legal theories." 346 Wis. 2d 635, at ¶ 39. Somehow, the court is supposed to overlook this discrepancy between the cases, according to Gillette.

Notwithstanding other factual differences apparent in *Kirk* (the case revolved around a deficiency action and the alleged waiver by Credit Acceptance of its right to arbitration after it waited nine months to compel arbitration after stipulating dismissal of its initial claims against the car owner, *id.* at ¶ 47), Gillette asks the court not to view the additional language as a "material difference" between the contracts. Dkt. No. 16 at 6. But this difference is material. Gillette's argument that the phrase "other legal theories" necessarily encompasses statutes is unpersuasive, especially when the state court's decision did not parse this phrase. Statutes are not mere legal theories.

Next, to remove her claim from the scope of arbitration, Gillette relies on a clause designed to carve-out a particular subset of repossession-related actions from arbitration. This carve-out provides that "'Dispute' does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You

5

to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind." Dkt. No. 15-1 at 5. In addition to excluding from arbitration the judicial remedy of replevin, Gillette asks the court to interpret this phrase broadly to exclude virtually *all* repossessions from arbitration. She finds that the word "any" that opens the carve-out precludes from arbitration repossession disputes "on any theory," including her consumer-based statutory and tort claims. Dkt. No. 16 at 7.

However, to secure relief with this clause, Gillette must ignore the qualification that she not seek monetary relief. To do this, she seeks a narrow interpretation of the "individual action" referred to in the carve-out. Gillette argues that the phrase "any individual action by You to prevent Us from using any such remedy" results in a single exception: "an injunction to prevent a repossession or sale of the vehicle" that is "incidental" to monetary relief. *Id*. As Gillette does not seek an injunction, she claims this carve-out does not apply. *Id.*

Again, commonsense interpretation and basic rules of grammar require the court to assess the entire meaning of a sentence, and not simply fragments that favor one party's desired result. The carve-out does not remove almost "any" repossession claim from arbitration, with a single exception, as Gillette claims. The Contract specifically makes certain repossession actions subject to arbitration, most importantly those involving "a request for monetary relief of any kind." Dkt. No. 15-1 at 5. It is unclear why "action" should be limited to an injunction. Gillette calls the reason "apparent," but offers nothing more. *See* Dkt. No. 16 at 7.

Instead of conclusory summations, the court turns to a subsequent paragraph in the Contract for additional insight as to how the parties contracted for arbitration to work in practice. The ninth paragraph of the arbitration clause states that "if the amount of the Dispute exceeds $50,000 or involves a request for injunctive *or declaratory relief* . . . any party can appeal the award to a

6

three-arbitrator panel administered by the Administrator." Dkt. No. 15-1 at 5 (emphasis added). Here, the Contract contemplates—as an arbitrable issue within the scope of "Dispute"—exactly the sort of dispute brought to this court, where one party is seeking injunctive *or* declaratory relief. Gillette's amended complaint specifically asks for "a declaration that plaintiff owes no further debt in connection with the vehicle." Dkt. No. 5 at 6. Gillette also demands monetary relief (in the form of damages, restitution, attorneys' fees, costs, and expenses) and "clear title to the vehicle," among other requests. *Id*. In sum, Gillette seeks monetary and declaratory relief through an individual action based on statutory and common law claims. The court sees no reason to isolate the initial reference to "any repossession" in the carve-out and find that it somehow bars otherwise arbitrable issues from arbitration.

When reviewing the scope of an arbitration contract, the court will not veer from the plain text to rewrite operative provisions that clearly indicate arbitrable issues. Accepting Gillette's arguments—to read some aspects of the arbitration provision broadly, yet others narrowly—would amount to such a rewrite. Federal courts are not forums for parties to revise the scope of binding arbitration clauses after they become relevant simply because one party hopes to avoid an inconvenient result.

Defendants' motion to compel arbitration will therefore be granted. Notwithstanding the language of § 3 of the FAA, 9 U.S.C. § 3, which suggests that the action should be stayed in response to such a motion, dismissal is appropriate here. Dismissal of the case in effect operates as a stay of the litigation, and since all of Gillette's claims are subject to arbitration, there is no need to continue the action. Once arbitration is complete, the parties are free to commence an action to either enforce or vacate the arbitration award, but that would be a new action. It makes little sense for this case to remain pending when there is no further action for the court to take.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion to compel arbitration (Dkt. No. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin, this  17th  day of October, 2019.

                                            s/ William C. Griesbach
                                            William C. Griesbach, Chief Judge
                                            United States District Court